

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00610-CR

Lorraine **CORONADO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 721051
Honorable Melanie Lira, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
    Irene Rios, Justice
    Adrian A. Spears II, Justice

Delivered and Filed: December 23, 2025

AFFIRMED

In two issues, appellant Lorraine Coronado appeals her conviction for misdemeanor family assault causing bodily injury. Specifically, Coronado contends the State failed to sufficiently prove venue and challenges the sufficiency of the evidence to support her conviction. We affirm.

### BACKGROUND

Coronado was charged with misdemeanor family assault causing bodily injury after her then girlfriend, Raven Carrasco, alleged Coronado hit her and pulled her hair while in Carrasco's

car. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b). Coronado waived her right to a jury trial and elected the trial court assess punishment if found guilty. Following the bench trial, at which the trial court found Coronado guilty of committing the charged offense, the trial court sentenced Coronado to thirty days in jail with no fine but then suspended the sentence and placed Coronado on community supervision for six months. Coronado appeals.

### SUFFICIENCY OF THE EVIDENCE

Although Coronado challenges the sufficiency of the evidence to support her conviction in her second issue, we address it first as it is a rendition issue affording the greatest relief if sustained.

### A. Standard of Review and Applicable Law

In a sufficiency review, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in favor of the verdict to determine whether any rational factfinder could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The factfinder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The factfinder may "believe all of [the] witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). The standard of review "gives full play to the responsibility of the [factfinder] fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

"An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Our role "is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*.

A person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another[.]" TEX. PENAL CODE ANN. § 22.01(a)(1). Assault is a result-oriented offense; "there must be an injury." *Price v. State*, 457 S.W.3d 437, 442 (Tex. Crim. App. 2015). Bodily injury can mean "physical pain." TEX. PENAL CODE ANN. § 1.07(a)(8). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

Family assault occurs when the person committing the assault, and the person assaulted are or were in a dating relationship. *See* TEX. PENAL CODE ANN. § 22.01(a)(1); *see also id.* at § 22.01(b)(2) (providing penalty increase to a third-degree felony if committed against a family member as defined by the Texas Family Code, including section 71.0021(b)'s "dating relationship," and the person committing the assault has previously been prosecuted for assaulting a family member). A "dating relationship" is statutorily defined as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b); *see also Sanchez v. State*, 499 S.W.3d 438, 442–43 (Tex. Crim. App. 2016) (encompassing both current and past relationships).

*B. Applicable Facts*

Carrasco testified she lives in Floresville, located in Wilson County, Texas, but works in San Antonio, which is in Bexar County, Texas, as a communication 911 dispatcher with the San Antonio Police Department. Carrasco stated that she and Coronado were in a dating relationship when Coronado called her on New Year's Day 2023. Carrasco was celebrating the new year with her extended family, when Coronado, who was at her former in-laws in Floresville, called Carrasco to come get her.

According to Carrasco, when she arrived to get Coronado, Coronado told her she would drive and to "jump" into the passenger seat without getting out of the car so no one would see her. Carrasco did not do so; rather, she got out of the driver's side and walked around her car to the passenger side. Coronado got mad and began to argue with her about getting out of the car. As Coronado drove, Coronado and Carrasco continued to argue. Carrasco testified that because she told Coronado to stop arguing, Coronado hit her with a closed fist on the left side of her face. Carrasco and Coronado continued arguing and "as soon as [they] were entering Elmendorf jurisdiction[,]" Coronado struck Carrasco again, followed by several more hits. Carrasco pled for Coronado to stop and while raising her hand to block Coronado's hits, asked what she was doing, causing Coronado to become angrier and continue hitting Carrasco. After Carrasco again tried blocking Coronado's strikes, Coronado started "hitting again and that is when she grabbed me by my hair[, pulling a chunk out,] and pushed my face down into . . . the floorboard." Upon resisting and telling Coronado to stop, Coronado released Carrasco. Carrasco explained Coronado hit her at least five times on the left side of her face, head, and eye, causing her pain.

After leaving Coronado's house, Carrasco went straight to her parents' house. During the afternoon on New Year's Day, Carrasco went to an urgent care center in Floresville and was diagnosed with having a concussion. The blood vessels in her left eye had also burst. Carrasco's sister and a friend took pictures of her injuries the night of the altercation and a couple days later, and those pictures were admitted into evidence.

During cross-examination, Carrasco acknowledged that she had consumed alcohol but claimed Coronado had been drinking as well. Carrasco testified that her alcohol consumption did not interfere with her ability to recall what happened between her and Coronado, but she did not

recall whether they stopped to see who Carrasco refers to as her "second mom" on the way to Coronado's house.

Carrasco also acknowledged that while Coronado first hit her in Floresville, most of the altercation occurred in Elmendorf, Bexar County. Having worked seven years as a 911 dispatcher in Bexar County and as a probation officer in Wilson County for four years prior to that, Carrasco was confident she knew the county lines between Bexar and Wilson counties. Carrasco claimed she attempted to call 911 during the altercation but panicked and hung up when Coronado reminded her where she worked.

Elmendorf Police Department Officer Christian Peña testified he originally spoke with Carrasco when she came to the Department to report the assault. Officer Peña noticed and documented that Carrasco had a bruised eye with visible burst blood vessels, and a bald spot where Carrasco claimed Coronado pulled out her hair. Following his interview of Carrasco and making a report, including taking pictures, Officer Peña confirmed it occurred in Bexar County, Texas. Officer Peña then notified his supervisor, Chief Marco Peña, who was also acting as the Department's investigator. According to Chief Peña, while conducting a follow-up interview of Coronado, she admitted to striking Carrasco and pulling her hair, but Coronado claimed Carrasco struck her first. Chief Peña stated he did not see any injuries on Coronado and opined she was the initial aggressor in the altercation.

Coronado testified in her own defense. Contrary to Carrasco's testimony, Coronado claimed she consumed no alcohol on New Year's Eve, but claimed Carrasco was intoxicated and asked Coronado to drive because she was intoxicated. Coronado acknowledged that she and Carrasco argued because Carrasco did not cross over the center console to get into the passenger seat as Coronado had asked. However, Coronado explained that Carrasco was the one who

continued arguing claiming that Coronado catered to her ex-husband. Coronado also stated that Carrasco kept threatening to jump out of the car if Coronado did not stop at Carrasco's second mom's house. According to Coronado, when Carrasco attempted to get out of the moving car, Coronado slowed down, told Carrasco to stop, and agreed to stop at Carrasco's second mom's house just to appease her.

After stopping, Carrasco introduced Coronado to her second mom and others but delayed leaving when Coronado told Carrasco she wanted to go home. Finally, Carrasco gave Coronado the keys to her car, and they left together but again began arguing. Next, Coronado testified it became silent between them, and then Carrasco unexpectedly hit her in the head causing Coronado to take her foot off the accelerator and swerve. According to Coronado, Carrasco then dialed 911 but hung up when Coronado told her to tell the police Carrasco hit her. Coronado claimed she saw a police officer at a gas station and was going to stop and report Carrasco hitting her but did not after Carrasco pleaded with her not to because of her job. Coronado then testified Carrasco attempted to hit her several times as they continued to argue, but Coronado defended herself, striking Carrasco on the face, grabbing her hair, and pushing her head away while telling Carrasco to stop. Coronado denied, however, pulling out Carrasco's hair.

During cross-examination, Coronado admitted she did not have any visible injuries following the altercation, only the back of her eye hurt later. While Coronado did not report the altercation herself, take photos, or seek medical care, she told her side of the story when police contacted her. Coronado stated she intended to press charges against Carrasco for assault.

*C. Analysis*

Carrasco testified to her version of the altercation as did Coronado about her version. Carrasco sought medical care and made a report to the police. Pictures of Carrasco's injuries and her medical records documenting her injuries and treatment were introduced into evidence. Coronado did not seek medical care or contact the police to make a report. Rather, she waited to make her statement until the police contacted her. Additionally, based on his experience and his investigation of the case, Chief Peña opined that Coronado was the initial aggressor.

Applying our legal sufficiency standards of review in considering the evidence in the light most favorable to the judgment as well as deferring to the factfinder's resolution of conflicting facts, we conclude a reasonable factfinder could have found Coronado committed misdemeanor family assault with bodily injury against Carrasco beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Thus, the evidence is legally sufficient to support Coronado's conviction.

We overrule Coronado's second issue.

**VENUE**

In her first issue, Coronado asserts the State failed to prove sufficient facts to establish venue in Bexar County, Texas.

*A. Standard of Review and Applicable Law*

The State bears the burden of proving venue by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 13A.002(b);[1] *Fulmer v. State*, 401 S.W.3d 305, 317 (Tex. App.—San Antonio 2013, pet ref'd). A reviewing court must presume venue was proven at trial unless venue was disputed, or the record affirmatively shows the contrary. TEX. R. APP. P. 44.2(c)(1); *Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014). The Court of Criminal Appeals has held that (1) venue is not an element of the offense, (2) failure to prove venue does not result in acquittal, and (3) failure to prove venue does not implicate a structural or constitutional error. *See Schmutz*, 440 S.W.3d at 35–39.

*B. Analysis*

On appeal, Coronado asserts the evidence is insufficient to establish the assault, if any, took place in Bexar County. However, as stated in the applicable facts above, Carrasco explained specifically where the assault occurred. Based on her knowledge of the county lines from her previous employment as a probation officer in Wilson County and currently as a 911 dispatcher in Bexar County, Carrasco conclusively stated the assault happened in Bexar County. Officer Peña also confirmed the reported assault occurred in Bexar County. While Coronado provided locations applicable to her version of the altercation, she neither admitted nor denied that it happened in Bexar County and did not even state in which county it occurred.

---

[1] The Code of Criminal Procedure article in effect at the time of Coronado's trial (August 2024), provided that venue could be proven by a preponderance of the evidence. *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 2(C), 1973 Tex. Gen. Laws 885, 978, *repealed by* Act of May 19, 2023, 88th Leg., R.S., ch. 765, § 3.001(5) (current version at TEX. CODE CRIM. PROC. ANN. art. 13A.002(b)) ("An allegation of venue under this article may be sustained if the attorney representing the [S]tate proves by a preponderance of the evidence that, based on the facts in the case, the county in which the prosecution is conducted has venue."), §§ 4.001, 4.003 (both sections instructing that repeal of article 13.17 and its recodification to article 13A.002(b) is without substantive revisions and became effective January 1, 2025).

To find the record affirmatively shows the contrary, there must be "affirmative and conclusive proof in the record that the venue of prosecution was improperly laid." *Dill v. State*, 895 S.W.2d 507, 508 (Tex. App.—Fort Worth 1995, no pet.) (quoting *O'Hara v. State*, 837 S.W.2d 139, 143 (Tex. App.—Austin 1992, pet. ref'd)). Coronado did not dispute venue in the trial court and the record does not affirmatively show the contrary. *See* TEX. R. APP. P. 44.2(c)(1). Therefore, we presume the State proved venue in Bexar County by a preponderance of the evidence. *See id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 13A.002(b).

We overrule Coronado's venue issue.

## CONCLUSION

Having overruled both of Coronado's issues, we affirm the trial court's final judgment.

Irene Rios, Justice

DO NOT PUBLISH